MARCIA A. MORRISSEY
State Bar No. 66921
2115 Main Street
Santa Monica, California 90405
Telephone: (310) 399-3259
Facsimile:  (310) 399-1173
E-Mail:      MorrisseyMA@aol.com

CHARLES PEREYRA-SUAREZ
State Bar No. 67106
Union Bank Plaza, Suite 3200
445 South Figueroa Street
Los Angeles, California 90071
Telephone: (213) 430-4777
Facsimile: (213) 623-1890
E-Mail:      cpereyra@cpslawfirm.com

Attorneys for Defendant
VLADIMIR IRAHETA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  CR 07-1172-DDP |
| Plaintiff, | **MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT** |
| v. | |
| VLADIMIR IRAHETA, | Date:  January 25, 2009 |
| Defendant. | Time: 3:00 p.m. |
| | Court:  Hon. Dean D. Pregerson |

# TABLE OF CONTENTS

**Page No.**

Table of Authorities................................................ ii

Memorandum of Points and Authorities................................. 3

I.   Statement of Facts............................................. 3

     A.   Count One.................................................. 3

     B.   Count Twenty-Two.......................................... 5

II.  Argument....................................................... 5

     A.   The Federal Commerce Power................................ 5

     B.   Count Twenty-Two, A Violation of 18 U.S.C.
          § 1959, Should be Dismissed Because the
          Statute is Unconstitutional............................... 9

          1.   Introduction........................................ 9

          2.   Section 1959 Does Not Regulate
               Commercial or Economic Activity...................... 11

          3.   Concerns of Federalism Require
               Limitation of Congressional Power
               Under the Commerce Clause........................... 15

          4.   No Substantial Affect on Interstate
               Commerce............................................ 16

          5.   Counts One and Twenty-Two Should
               Be Dismissed Because 18 U.S.C. § 1952
               and 18 U.S.C. § 1959 are
               Unconstitutional as Applied......................... 16

          6.   Count One and Twenty-Two Should be
               Dismissed Because They Omit Necessary
               Factual Allegations of an Essential
               Element of the Offense.............................. 21

III. Conclusion..................................................... 23

i

# TABLE OF AUTHORITIES

**Page No.**

*A.L.A. Schechter Poultry Corp. v. United States*,
    295 U.S. 495 (1935).......................................... 6

*Alden v. Main*,
    527 U.S. 706 (1999).......................................... 16

*City of Boerne v. Flores*,
    521 U.S. 507 (1997).......................................... 16

*College Savings Bank v. Florida Prepaid*
*Postsecondary Education Expense Board,*
    527 U.S. 666 (1999).......................................... 16

*Engle v. Isaac*,
    456 U.S. 107 (1982).......................................... 5

*Florida Prepaid Postsecondary Expense Board*
*v. College Savings Bank  and United States,*
    527 U.S. 627 (1999).......................................... 16

*Gibbons v. Ogden*,
    9 Wheat. 1, 6 L. Ed. 23 (1824). ............................ 6

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991).......................................... 5

*M'Culloch v. Maryland*,
    17 U.S. 316 (1819).......................................... 5

*N.L.R.B. v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937).......................................... 6

*Russell v. United States*,
    369 U.S. 749 (1962).......................................... 21, 22

*Seminole Tribe of Florida v. Florida*,
    517 U.S. 44 (1997).......................................... 16

*United States v. Alkhabaz*,
    104 F.3d 1492 (6th Cir. 1997)................................ 21

*United States v. Bass*,
    404 U.S. 336 (1971).......................................... 5, 14

*United States v. Bishop*,
  66 F.3d 569 (3rd Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Collins*,
  48 F.3d 95 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Ferber*,
  966 F. Supp. 90 (D. Mass. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Garcia*,
  68 F. Supp. 2d 802 (E.D. Mich. 1999). . . . . . . . . . . . . . . . . 16 , 17, 18, 22

*United States v. Grey*,
  56 F.3d 1219 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Hall*,
  20  F.3d 1084 (10th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Levin*,
  973 F.2d 463 (6th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Lopez*,
  514 U.S. 549 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 11, 14, 15, 16, 19

*United States v. Mallory*,
  84 F. Supp. 496 (S.D. Fla. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Mapp*,
  170 F.3d 328 (2nd Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. McGuire*,
  178 F.3d 203 (3rd Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Morrison*,
  529 U.S. 598 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Polanco*,
  145 F.3d 536 (2nd Cir. 1998), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Quigley*,
  53 F.3d 909 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Torres*,
  129 F.3d 710 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wickard v. Filburn*,
  317 U.S. 7 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# FEDERAL STATUTES

<u>Page No.</u>

2 U.S.C. § 192. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

18 U.S.C. § 844. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 922. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 1952. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

18 U.S.C. § 1959. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 1961. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

18 U.S.C. § 1962. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

18 U.S.C. 2119 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 3591. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21 U.S.C. § 848. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 U.S.C. § 1398. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Rule of Criminal Procedure 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# STATE STATUTES

California Penal Code § 31. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

California Penal Code § 187. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

1   MARCIA A. MORRISSEY
    State Bar No. 66921
2   2115 Main Street
    Santa Monica, California 90405
3   Telephone: (310) 399-3259
    Facsimile:  (310) 399-1173
4   E-Mail:      MorrisseyMA@aol.com

5   CHARLES PEREYRA-SUAREZ
    State Bar No. 67106
6   Union Bank Plaza, Suite 3200
    445 South Figueroa Street
7   Los Angeles, California 90071
    Telephone: (213) 430-4777
8   Facsimile: (213) 623-1890
    E-Mail:      cpereyra@cpslawfirm.com
9
    Attorneys for Defendant
10  VLADIMIR IRAHETA

11

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16
    UNITED STATES OF AMERICA,        )   CASE NO.  CR 07-1172-DDP
17                                   )
                    Plaintiff,       )   **MOTION TO DISMISS THE**
18                                   )   **SECOND SUPERSEDING**
              v.                     )   **INDICTMENT**
19                                   )
    VLADIMIR IRAHETA,                )   Date:    January 25, 2009
20                                   )   Time: 3:00 p.m.
                    Defendant.       )   Court:  Hon. Dean D. Pregerson
21                                   )
                                     )
22                                   )
                                     )
23  ─────────────────────────────────)

24         Vladimir Iraheta, through his counsel, moves to dismiss the Second

25  Superseding Indictment as an unconstitutional exercise of congressional power

26  under the Commerce Clause, Article I, Section 8 of the United States Constitution.

27  //

28  //

                                     1

1        This motion is based on the attached memorandum of points and

2    authorities, and such additional evidence and argument as may be presented before

3    or during the hearing on this motion.

4

5    DATED:  December 23, 2009        Respectfully submitted,

6

7                                      MARCIA A. MORRISSEY

8                                      CHARLES PEREYRA-SUAREZ

9

10                     By:    /s/ Marcia A. Morrissey

11                             Marcia A. Morrissey

12                             Attorneys for Defendant
                               VLADIMIR IRAHETA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Statement of Facts**

    **A.    Count One**

Vladimir Iraheta is charged in Count One of the Second Superseding Indictment with violating the RICO statute, 18 U.S.C. § 1962(d), by conducting affairs of an enterprise – the "CLCS Organization" –  through a pattern of racketeering activity.  The time period of the RICO violation is "a date unknown to the Grand Jury and continuing until on or about September 2008".  (Doc. 343, p. 15 ¶ 2).   The racketeering activity alleged against Vladimir Iraheta consists of the following overt acts:

| Paragraph | Date | Activity |
|---|---|---|
| ¶ 16(1) | 7/21/2001 | Killing of J.B. |
| ¶ 16(2) | 7/21/2001 | Wounding of A.H. |
| ¶ 16(3) | 1/19/2002 | Attack on a car |
| ¶ 16(22) | 12/28/2005 | Gang injunction violation |
| ¶ 16(23) | 1/9/2006 | Attendance at a CLCS organization meeting |

With exception of the alleged "organization meeting" on January 9, 2006, which is not a crime, each of the acts with which Vladimir Iraheta is charged constitutes criminal conduct under California law.  *See, e.g.,* California Penal Code  § 187 (homicide), § 245(a) (assault with a deadly weapon), § 594(a) (vandalism), and § 166(a) contempt of court).

Count One alleges that "[d]efendants would enforce their control over the commerce and criminal activities in CLCS Organization territory by employing intimidation, violence and threats of violence against individuals who did not comply with CLCS Organization directives."  It is alleged that Eduardo Hernandez, among others, "would either engage in such enforcement acts directly, or order subordinate CLCS Organization members and associates to carry out such enforcement acts.  (Doc. 343, pp. 18-19, ¶ 12).  It is alleged that Vladimir Iraheta

and Leonidas Iraheta, among others, "would execute such enforcement actions, under the direction of CLCS Organization shot callers or other CLCS Organization members authorized by CLCS Organization shot callers to direct such enforcement actions." (*Id.,* p. 19 ¶ 12). It is further alleged that Eduardo Hernandez, Vladimir Iraheta and Leonidas Iraheta, among others, "would further maintain the CLCS Organization's control of its territory by engaging in acts of intimidation, threats of violence, and actual violence against individuals who were, or who were perceived by the CLCS Organization members to be, members of rival gangs to the 18th Street Gang or the CLCS Organization to prevent those gangs from encroaching on CLCS Organization territory, conducting narcotics trafficking or criminal activities in the CLCS Organization territory, or otherwise competing with the criminal operations of the enterprise. (*Id.*, p. 19,¶ 13). It is alleged that Eduardo Hernandez, Vladimir Iraheta and Leonidas Iraheta, among others, "were further maintaining the CLCS Organization's control of its territory by allying the CLCS Organization with the Mexican Mafia, and paying 'taxes' to the Mexican Mafia in return for the Mexican Mafia's protection and authorization to control narcotics trafficking in other illegal activities in CLCS Organization territory." (*Id.,* pp. 19-20, ¶ 14). Finally, it is alleged that Vladimir Iraheta, Leonidas Iraheta and Eduardo Hernandez, among others "[t]hrough the collection of rent and the control of commerce and criminal activity in CLCS Organization territory" "operated an enterprise generating significant proceeds from narcotics trafficking and other illegal activity in CLCS Organization territory." (*Id.,* p. 20, ¶ 15).

Count One contains only a pro forma, boilerplate allegation of interstate commerce in paragraph 2, which claims that the CLCS Organization "engaged in, and the activities of [CLCS] affected, interstate and foreign commerce". (*Id*., p. 15).

1

**B.     Count Twenty-Two**

Count Twenty-One alleges that on or about July 21, 2001, Eduardo Hernandez, Vladimir Iraheta and Leonidas Iraheta murdered, and aided, abetted, counseled, commanded, induced and procured the murder of, J.B., in violation of California Penal Code §§ 31, 187 and 189.  It is alleged that this crime was committed "for the purpose of maintaining and increasing position" in the racketeering enterprise.  (*Id.,* p. 88, ¶ 3).  There is a boilerplate allegation that the activities of the enterprise "affected [ ] interstate and foreign commerce."  (*Id.*, ¶ 1).

**II.     Argument**

**A.     The Federal Commerce Power**

The United States Constitution created a federal government of limited, enumerated powers, which are strictly defined and are specifically enumerated in Article I, § 8 of the United States Constitution.  Congress may act pursuant to only the powers granted to it by the Constitution.  *M'Culloch v. Maryland*, 17 U.S. 316, 405 (1819).  Congress may enact legislation that is "necessary and proper" to achieving a constitutionally permitted end, but may not use the "necessary and proper" clause as a pretext for regulating activities not within its constitutional reach.  *Id.*, at 387.  Limiting the legislative authority of Congress was a deliberate and thoughtful attempt by the Framers of the Constitution to keep the balance of state and federal power in check, so that neither could grow too powerful and usurp the other.  *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991).

Congress has no general "police power," such as that exercised by the States.  *Engle v. Isaac*, 456 U.S. 107, 128 (1982) ("States possess primary authority for defining and enforcing the criminal law.").  In *United States v. Bass*, 404 U.S. 336, 349 (1971), the Supreme Court stated as follows:

[U]nless Congress conveys its purpose clearly, it will not be deemed
to have significantly changed the federal-state balance.  Congress has

5

traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States.  This congressional policy is routed in the same concepts of American federalism that have provided the basis for judge-made doctrines.  We will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdictions.

Because of the absence of any general federal police power, most federal criminal statutes, as well as many other federal statutes of a regulatory nature, have been adopted under the auspices of the Commerce Clause of the United States Constitution, Article I, § 8, cl. 3, which provides that "[t]he Congress shall have power . . . [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

The Supreme Court, in *Gibbons v. Ogden*, 9 Wheat. 1, 189-90, 6 L. Ed. 23 (1824), first articulated that the federal commerce power, "like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than prescribed in the constitution."  The Court, however, left for another day the question of the breadth of this power.

Prior to the 1930's and the New Deal legislation, the United States Supreme Court was reluctant to extend the reach of the commerce clause to allow the sweeping federal regulation of conduct traditionally regulated by the State.  *See, e.g., A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) (striking down federal regulations of wages and hours of workers).   However, during the presidency of Franklin D. Roosevelt, there was an abrupt reversal of the Court's exercise of judicial restraint concerning the reach of the Commerce Clause.  *See, e.g., N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937) (National Labor Relations Act upheld as a lawful exercise of the Commerce power).

1    A great expansion of federal power soon followed, with the Court

2  increasingly approving federal regulation in areas previously left to the states.

3  Congress passed the 1960's civil rights and other "Great Society" legislation under

4  the auspices of the commerce power.   In the late 1960's and early 1970's laws

5  were passed to regulate guns and drugs, and more recently, in 1988 and 1994,

6  respectively, Congress enacted the 21 U.S.C. § 848(e) "drug kingpin" death

7  penalty provision, and 18 U.S.C. § 3591, the Federal Death Penalty Act.  The

8  result has been a sharp increase in federal regulation of American life, with a

9  concomitant explosion of federal criminal prosecutions of activities historically

10  regulated by the states.

11    The scope of the Commerce Clause over the course of the last 60 years has

12  been both expanded and contracted to encompass a broad range of commercial

13  activity.  The furthest reach of this expansion became evident in *Wickard v.*

14  *Filburn*, 317 U.S. 7 111 (1942).  There, the Court allowed the Secretary of

15  Agriculture to assess a fine against the petitioner in that case for growing twelve

16  acres of wheat beyond that permitted by the Agricultural Adjustment Act of 1938.

17  The petitioner argued that he used the extra wheat for his own consumption, and

18  that his activity, standing alone, did not have a substantial effect on interstate

19  commerce.  The Court rejected this argument, stating: "That appellee's own

20  contribution to the demand for wheat may be trivial by itself is not enough to

21  remove him from the scope of federal regulation where, as here, his contribution,

22  taken together with that of many others similarly situated, is far from trivial."  *Id*.,

23  at 127.

24    *United States v. Lopez*, 514 U.S. 549 (1995), signaled an abrupt change of

25  course in the Supreme Court's tolerance for the expansion of the commerce

26  power.  In *Lopez*, the Supreme Court held that the Gun-Free School Zones Act of

27  1990, 18 U.S.C. § 922(q) (1) (A), which made it a federal crime to knowingly

28  possess a firearm in a school zone, exceeded Congress' authority under the

1   Commerce Clause, because allowing the Act to stand would amount to granting

2   Congress "a general police power of the sort retained by the States.   514 U.S. at

3   567.  The Court explained that the Commerce Clause provides Congress the power

4   to regulate three categories of activity.  "First, Congress may regulate the use of

5   the channels of interstate commerce." 514 U.S. at 558.  "Second, Congress is

6   empowered to regulate and protect the instrumentalities of interstate commerce, or

7   persons or things in interstate commerce . . . ." *Id.*  "Finally, Congress' commerce

8   authority includes the power to regulate those activities having a substantial

9   relation to interstate commerce, i.e., those activities that substantially affect

10   interstate commerce." *Id*., at 558-59.

11         Concluding at the outset that Congress was neither regulating the channels

12   or instrumentalities of interstate commerce, the *Lopez* Court focused on whether

13   handgun possession had a substantial effect on interstate commerce, and found

14   that it did not:

15               Section 922 (q) is a criminal statute that by its terms has nothing to do

16               with "commerce" or any sort of economic enterprise, however broadly

17               one might define those terms.  Section 922 (q) is not an essential part

18               of a larger regulation of economic activity, in which the regulatory

19               scheme could be undercut unless the intrastate activity were regulated.

20               It cannot, therefore, be sustained under our cases upholding

21               regulations of activities that arise out of or are connected with a

22               commercial transaction, which viewed in the aggregate, substantially

23               affects interstate commerce.   Second, § 922 (q) contains no

24               jurisdictional element which would ensure, through case-by-case

25               inquiry, that the firearm possession in question affects interstate

26               commerce.

27   *Id*., at 557-59.

28

8

1    This language in *Lopez* requires that the activity in question regulate an

2    economic activity.[1]   An activity may be economic if it is part of a larger regulation

3    of economic activity *and* failure to regulate the activity under scrutiny could

4    undercut that regulatory scheme.  Or, the regulation must have a jurisdictional

5    element that ensures that each specific incident of the proscribed activity affects

6    interstate commerce.  All of Congress' regulations must withstand scrutiny under

7    the *Lopez* rubric.

8    As to *Lopez'* third category, the Supreme Court has not set out any bright

9    line test to determine what types of activities do or do not "substantially affect"

10   interstate commerce.  Nonetheless, a review of the statutes under which Vladimir

11   Iraheta is being prosecuted reveals that this federal capital prosecution cannot be

12   sustained under *Lopez*.[2]

### B.    Count Twenty-Two, a Violation of 18 U.S.C. § 1959, Should be Dismissed Because the Statute is Unconstitutional

### 1.    Introduction

16   18 U.S.C. § 1959 exceeds the authority of Congress to regulate commerce.

17   The statute provides as follows:

---

20   [1]    For instance, in *Lopez* the Court stated that "we have upheld a variety of congressional Acts regulating intrastate *economic* activity where we have concluded that the activity substantially affected interstate commerce," 514 U.S. at 557, and "[w]here *economic* activity substantially affects interstate commerce, legislation regulating that activity will be sustained," *id.,* at 559, and "[t]he possession of a gun in a local school zone is in no sense an *economic* activity that might, through repetition elsewhere, substantially affect interstate commerce. *Id.,* at 566 (emphasis added).

26   [2]    Mr. Iraheta acknowledges that this argument was rejected by the Second Circuit Court of Appeals in *United States v. Torres*, 129 F. 3d 710 (2d Cir. 1997).  However, neither the Ninth Circuit nor the Supreme Court has resolved the issue raised herein.

1   Whoever, as consideration for the receipt of, or as consideration for a

2   promise or agreement to pay, anything of pecuniary value from an

3   enterprise engaged in racketeering activity, or for the purpose of

4   gaining entrance to or maintaining or increasing position in an

5   enterprise engaged in racketeering activity, murders, . . . any individual

6   in violation of the laws of any State or the United States . . . shall be

7   punished (1) for murder, by death or life imprisonment, or a fine under

8   this title, or both . . . .

9   (b)   As used in this section - -

10   (1)   "racketeering activity" as the meaning set forth in Section

11   1961 of this title;[3] and

12   (2)   "enterprise" includes any partnership, corporation,

13   association or other legal entity, and any union or group

14   of individuals associated in fact although not a legal

15   entity, which is engaged in, or the activities of which

16   affect, interstate or foreign.

17   In order to find a defendant guilty under 18 U.S.C. § 1959, the jury must

18   find that the enterprise "engaged in" or its activities "affect[ed] interstate or

19   foreign commerce." This section punishes violent crimes within the sovereign

20   jurisdiction of states but does not require a nexus between prohibited acts of

21   
_____

22   [3]   18 U.S.C. § 1961 defines "racketeering activity," in part, as any act or
threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion,

23   dealing in obscene matter, or dealing in a controlled substance or listed chemical

24   . . . , which is chargeable under State law and punishable by imprisonment for
more than one year." There is, however, no guidance in the statute as to how

25   many acts in which an enterprise must engage in order to be "engaged in

26   racketeering activity." Furthermore, the statute does not define the manner in
which acts of individual members of an enterprise can be fairly attributed to an

27   enterprise in order to determine whether those acts are individual acts or the acts

28   of the enterprise itself.

10

violence, including murder, and interstate commerce.  While the statute does require that a violent act must be committed by a person to maintain his position in an enterprise and requires that the enterprise engage in or affect interstate commerce, it does not require that the *actus reus* of the defendant – the commission of a murder, assault or other crime of violence –  have any connection to interstate commerce.  18 U.S.C. § 1959 does not contain an "express jurisdictional element which might limit its reach to a discrete set of [violent acts] . . . that additionally have an explicit connection with or effect on interstate commerce."  *United States v. Lopez*, 514 U.S. at 562.  The crime with which Vladimir Iraheta has been charged does not affect interstate commerce and this federal capital prosecution should, therefore, be dismissed.

### 2.      Section 1959 Does Not Regulate Commercial or Economic Activity

By its own terms, § 1959 does not regulate any sort of economic enterprise or commercial activity.  Rather, it regulates only criminal activity and therefore it is not the proper subject of congressional regulation under the Commerce Clause.

In *Lopez*, the Supreme Court did not provide an exhaustive list of activities that "substantially affect" interstate commerce;  the only qualifier the Court put on the class was that the thing or activity being regulated must be a commercial or economic activity.  514 U.S. at 560-61.  Subsequent to *Lopez*, federal courts has struggled with this jurisdictional issue and, increasingly, the boundaries controlling federal intervention into areas of traditional state concern are being clarified.   In *United States v. Morrison*, 529 U.S. 598 (2000), the Supreme Court held that the Commerce Clause did not provide Congress with authority to enact the Violence Against Women Act of 1994 (42 U.S.C. § 1398), which provides a federal civil remedy for victims of gender-motivated violence.  The Court expressly "reject[ed] the argument that Congress may regulate non-economic,

11

1   violent criminal conduct based solely on that conduct's aggregate effect on
2   interstate commerce," stating as follows;

3           The Constitution requires a distinction between what is truly national
4           and what is truly local.  In recognizing this fact, we preserve one of the
5           few principles that has been consistent since the  Clause was adopted.
6           The regulation and punishment of intrastate violence that is not
7           directed at the instrumentalities, channels, or good involved in
8           interstate commerce has always been the province of the States.
9           Indeed, we can think of no better example of the police power, which
10          the Founders denied the National Government and reposed in the
11          States, than the suppression of violent crime and vindication of its
12          victims.

13  *Id*., at 617-18 (citations omitted).

14          While the tragedy of a murder cannot be minimized, the violent nature of
15  this act does not in and of itself justify federal regulation under the Commerce
16  Clause.  *See, e.g., United States v. Bishop*, 66 F. 3d 569, 585 (3ʳᵈ Cir. 1995) ("The
17  mere presence of a jurisdictional element, however, does not in and of itself
18  insulate a statute from judicial scrutiny under the Commerce Clause, or render it
19  per se constitutional.  To the contrary, courts must inquire further to determine
20  whether the jurisdictional element has the requisite nexus with interstate
21  commerce.").   The mere presence in a statute of a jurisdictional element should
22  not except it from the limitations *Lopez* sets on congressional commerce power.
23  Instead, the jurisdictional element should be viewed only as the means to bring the
24  law within one of *Lopez's*  three areas of permissible federal regulation.

25  //
26  //
27  //
28  //

1    Even though the definition of "enterprise" in 18 U.S.C. § 1959 includes an

2    interstate commerce element,[4] the statue makes murder, and other enumerated

3    violent acts, federal offenses if committed "for the purpose of gaining entrance to

4    or maintaining or increasing position in an enterprise engaged in racketeering

5    activity" *without* requiring any relationship between a prohibited act of murder or

6    other violent act and interstate commerce.  Racketeering activity is defined in

7    § 1959 by reference to 18 U.S.C. § 1961(1), to include "any act or threat involving

8    murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in

9    obscene matter or dealing in a controlled substance . . . which is chargeable under

10   state law . . . ."  By definition, the purely state offenses listed in § 1961(1) do not

11   include an interstate component.

12   The RICO statute requires a closer nexus between a defendant's conduct

13   and interstate commerce than does 18 U.S.C. § 1959.   A RICO prosecution seeks

14   to penalize conduct that directs or conducts an enterprise.  The activities

15   prohibited by 18 U.S.C. § 1962(a) - (c) include the acquisition, control or conduct

16   of the affairs of an enterprise.  Each of the subsections of 18 U.S.C. § 1962

17   requires that the prohibited conduct be carried out as part of the operation or

18   control of an enterprise engaged in interstate commerce.  For example, under 18

19   U.S.C. § 1962(c), it is unlawful for a person to participate in the affair of "any

20   enterprise which is engaged in . . . interstate . . . commerce."

21   Unlike the RICO statute, § 1959 punishes any act of violence committed by

22   an individual to maintain his or her status in an enterprise.  The statute requires no

23   other relationship to commerce.  It does not require that a violent act affect

24   commerce.  It requires nothing more than the enterprise, not the defendant through

25

26   ───────────────

27   [4]    An "enterprise" is defined in 18 U.S.C. § 1959(b)(2) to include "any
     group of individuals associated in fact although not a legal entity, which is
28   engaged in, or the activities of which affect, interstate or foreign commerce."

his conduct, be engaged in or affect commerce.   Even though the statute requires that an accused commit a violent crime to gain entrance to or maintain or increase a position in an enterprise, there is no requirement that any conduct of the defendant affect commerce.  The "substantial affect" test of *Lopez* is not satisfied by § 1959 because it does not contain a jurisdictional element that limits its reach to the discrete of acts prohibited by the statute.

There are no clearly defined criteria in 18 U.S.C. § 1959 by which it can be determined on a case-by-case basis that the prohibited conduct has any effect on interstate commerce.   As stated by the Court in *United States v, Bass*, 404 U.S. 336 (1971):

> Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States.   This congressional policy is rooted in the same concepts of American Federalism that have provided the basis for judge-made doctrines.  As this court emphasized only last Term in *Rewis v. United States, supra*, we will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction.   In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact, faced and intended to bring into issue, the critical matters involved in the judicial decision.

*Id*., at 349 (internal citations and footnote omitted).

Upholding the constitutionality of § 1959 merely because it contains a jurisdictional element also sets a troublesome precedent for the future of federal regulation under the Commerce Clause, a precedent contrary to the reasoning of *Lopez*.  In *Lopez*, the Court expressed concern that expansion of the "substantial affect" test by piling inference upon inference to find an aggregate affect on interstate commerce would allow for the regulation of anything, including in the

14

1   area of traditional state concerns such as education, family relations and crime.

2   514 U.S. at 549.  Likewise, the ability to bring within federal regulation any

3   activity by attaching on the end of a law a qualifier that some tangible object

4   related to the activity at some point traveled in interstate commerce would allow

5   Congress to regulate virtually anything.  Under this reasoning, Congress could set

6   a federal curriculum in both and private schools, one of the types of regulation that

7   the *Lopez* Court feared in particular, so long as the books used by those schools

8   had once traveled in interstate commerce.  It seems inconceivable that the *Lopez*

9   Court would allow an end-run along the limits of the commerce power by allowing

10  a meaningless jurisdictional element, wholly unrelated to the activity being

11  regulated, to satisfy the requirements of the Commerce Clause.

12

13  **3.      Concerns of Federalism Require Limitation of
         Congressional Power Under the Commerce Clause**

14          As applied in this case, 18 U.S.C. § 1959 offends state sovereignty by

15  making murder a capital offense based only on the tenuous thread that an

16  enterprise in which a defendant must hold a position affects commerce.  Section

17  1959 authorizes imposition of a death penalty for the crime of murder, an offense

18  historically prosecuted by states.  California already has murder statutes, and

19  "[u]nder our federal system, the 'states possess primary authority for defining and

20  enforcing the criminal law.'" *Lopez*, 514 U.S. at 561, n. 3.  By legislating the death

21  penalty for an offense historically within the sovereign jurisdiction of the State of

22  California and by authorizing imposition of the penalty of death without requiring

23  that the capital crime itself have a "substantial affect" on commerce, Congress

24  abandoned the sensitive boundary that separates federal and state criminal law

25  enforcement.

26          In this case, there is no suggestion that the State of California is or was

27  unable to effectively enforce its own criminal laws.  Stated differently, this is not a

28  case in which state laws or law enforcement were inadequate to prosecute Mr.

15

1  Iraheta.  The use of the RICO statutes, particularly § 1959, upsets the balance of
2  power by federal prosecution of purely state offenses.

3              **4.    No Substantial Affect on Interstate Commerce**

4          In *Lopez*, the Court held the Gun-Free School Zone Act exceeded the
5  regulatory authority of the Commerce Clause because the Act is a criminal statute
6  that has nothing to do with commerce and because its statutory language does not
7  provide a sufficient nexus to interstate commerce to ensure "through  case-by-case
8  inquiry that the firearm possession in question affects interstate commerce."  514
9  U.S. at 561.  Similarly, 18 U.S.C. § 1959 is a criminal statute, not intended as a
10  direct regulation of commerce and, like the gun statute in *Lopez*, § 1959 does not
11  contain a sufficient nexus for a case-by-case analysis to determine whether an
12  alleged act of violence has a "substantial affect" on interstate commerce.

13          The Supreme Court has forcefully spoken that state sovereignty must be
14  respected.  States "are not relegated to the role of mere provinces or political
15  corporations, but retain the dignity, though not the full authority, of sovereignty"
16  *Alden v. Main*, 527 U.S. 706 (1999).  *See also College Savings Bank v. Florida*
17  *Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999); *Florida*
18  *Prepaid Postsecondary Expense Board v. College Savings Bank and United*
19  *States*, 527 U.S. 627 (1999); *City of Boerne v. Flores*, 521 U.S. 507 (1997);
20  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1997).

21          Without a clear statement in 18 U.S.C. § 1959 by which it can be
22  determined that, in this case, the alleged murder had a "substantial affect" on
23  interstate commerce, § 1959 exceeds the power of Congress to regulate commerce
24  and is unconstitutional.

25              **5.    Counts One and Twenty-Two Should Be Dismissed**
                      **Because 18 U.S.C. § 1952 and 18 U.S.C. § 1959 Are**
26                    **Unconstitutional as Applied**

27          Under *Lopez*, it is necessary to analyze the alleged jurisdictional elements
28  of 18 U.S.C. §§ 1959 and 1962 to determine whether the Second Superseding

                                      16

1   Indictment alleges a *substantial* affect upon interstate commerce.  This Court may

2   also make pretrial factual findings necessary to determine that §§ 1959 and 1962

3   are unconstitutional as applied.  *See, e.g., United States v.* Garcia, 68 F. Supp. 2d

4   802, 809 n. 8 (E.D. Mich. 1999); *United States v. Levin*, 973 F. 2d 463, 467 (6th

5   Cir. 1991).  The "substantial affect" test requires that any predicate violent act

6   must "bear a strong relationship to racketeering activity that affects interstate

7   commerce [so that] it does not risk improperly making purely local crimes a matter

8   of federal concern."  *United States v. Mapp*, 170 F. 3d 328, 335 (2nd Cir. 1999).

9   As applied in Count One and Twenty-Two, 18 U.S.C. § 1962 and 18 U.S.C. §

10  1959 exceed Congress' Commerce Clause power.  Count Twenty-Two is merely

11  an allegation that the California state murder statute was violated.  Count One

12  contains only a boilerplate allegation of an unspecified interstate commerce affect

13  by the alleged enterprise and allege no effect on interstate commerce of the

14  predicate acts themselves.

15          The United States Attorney for the Central District of California attempts to

16  use the authority of § 1959 to impose the death penalty based upon a state law

17  violation supported by a bare allegation that a local street gang,  CLCS, was an

18  enterprise, that Vladimir Iraheta is a member or associate of the gang, and that

19  Vladimir Iraheta committed an act of murder in violation of state law.  The

20  Second Superseding Indictment contains no allegation that the enterprise engaged

21  in the kind of activities that have been recognized in RICO prosecutions as those

22  which are part of interstate commerce, such as robbery, hijacking, car theft or any

23  typical form of legitimate commerce.  *See, e.g., United States v. Polanco*, 145 F.

24  3d 536, 539-40 (2nd Cir. 1998), *cert. denied*, 525 U.S. 1071 (1999) (evidence

25  insufficient to prove 18 U.S.C. § 1959 violation because there was no evidence

26  that defendant murdered victim in order to help him maintain or enhance his

27  position in the criminal enterprise).

28

17

1    A recent jurisdictional Commerce Clause challenge to 18 U.S.C. § 1959 in

2    *United States v. Garcia*, 68 F. Supp. 2d 802 (E.D. Mich. 1999), led the district

3    court to dismiss the § 1959 count because the "allegations supporting federal

4    jurisdiction [were] insufficient."  Although the district court rejected a facial

5    challenge to § 1959, it upheld *Garcia*'s challenge to the statute as applied in his

6    case.  The district court found as follows:

7        As described above, VCAR has no jurisdictional element which ties

8        either the violent act or the conduct of the defendant to interstate

9        commerce; the only jurisdictional element relates to activities of the

10       enterprise.  Under *Lopez*, the weakness of this attenuated jurisdictional

11       element demands something more than a *de minimus* connection be

12       established under § 1959.

13

14       In *Lopez*, the Court held that Congress could regulate a noncommercial

15       intrastate activity under its commerce power if the activity had a *close*

16       *and substantial effect* on, or relationship to, interstate commerce.  The

17       Court rejected the government's argument that crime in general has the

18       negative effect on interstate commerce, and cautioned against piling

19       "inference upon inference in a manner that would bid fair to convert

20       congressional authority under the Commerce Clause to a general

21       police power of the sort retained by the States."  Thus, for the federal

22       government to assert that it has an interest in noncommercial intrastate

23       activity, the government must show that the activity has a close and

24       substantial affect on interstate commerce.

25   68 F. Supp. 2d at 811 (emphasis in original; internal citations omitted).

26       The court in *Garcia* found that even if the government had proved the

27   defendant murdered the victim in order to "enhance the power and authority of

28   [his gang] and his role within it," the murder was, as is the murder charged in

18

1   Count Twenty-Two in this case, "a street crime" committed by a criminal in a

2   local jurisdiction:   "That this enterprise may have the *de minimus* impact on

3   interstate commerce required to sustain federal jurisdiction under RICO, does not

4   support the conclusion that one can bootstrap a purely local street crime into a

5   federal capital offense.  A stronger and more substantial connection or impact on

6   interstate commerce is required."  *Id.,* at 811.

7          In this case, there is no evidence that the activities of the CLCS gang

8   substantially affected interstate commerce.  In this case, as in *Garcia*, "[i]n the

9   end, the Government is left only with an argument specifically rejected by *Lopez* –

10  that the cumulative effect of violent crime in and of itself substantially affects

11  commerce."[5]  *Garcia*, at 812.

12         Since *Lopez*, federal prosecutions of offenses traditionally initiated by state

13  authorities have been rejected by courts when brought pursuant to federal statutes

14  containing interstate commerce requirements because the courts have found the

15  prosecutions lacking statutory authority or factual bases from which to find a

16  "substantial affect" on interstate commerce to justify intrusion into matters within

17  the sole jurisdiction of the state.  *See United States v. Grey*, 56 F. 3d 1219, 1226

18  (10th Cir. 1995) (prosecution failed to prove the requisite nexus to interstate

19  commerce in money laundering prosecution); *United States v. Quigley*, 53 F. 3d

20  909, 910-11(8th Cir. 1995) (insufficient nexus to interstate commerce to constitute

21  a Hobbs Act violation when defendants robbed money from two individuals who

22  were on their way to pick up some beer purchased over the telephone); *United*

23  *States v. Collins*, 48 F. 3d 95, 100-01 (5th Cir. 1994) (Hobbs Act conviction invalid

24  _____

25         [5]     In *Lopez*, the United States Supreme Court stated  that "if we were to

26  accept the Government's arguments [that the cumulative effect of violent crime in
    and of itself substantially affects commerce]  we are hard pressed to posit any

27  activity by an individual that Congress is without power to regulate."  514 U.S. at

28  564.

1   because defendant's robbery of an individual did not have a substantial impact on

2   interstate commerce).

3        In *United States v. Mallory*, 84 F. Supp. 496 (S.D. Fla. 1995), the district

4   court dismissed an indictment and held the federal carjacking statute, 18 U.S.C.

5   2119, unconstitutional as applied because the indictment charged nothing more

6   than a local crime, concluding as follows:

7          There are no allegations of jurisdictional facts in the six-count

8          indictment other than the boiler-plate recitation that the automobiles

9          and the handgun "had been transported, shipped or received in

10         interstate commerce," which the court concludes is insufficient.  This

11         determination does not mean the Government cannot plead facts which

12         would satisfy federal jurisdictional requirements.  The absence of

13         jurisdictional facts, however, along with the absence of clear findings

14         in the statute or legislative history of Title 18, section 2119 that the

15         local crimes sought to be regulated have a substantial impact on

16         interstate commerce, different for murder, robbery, rape, burglary,

17         theft or any other intrastate crime, renders the indictment fatally

18         defective.

19   *Id.,* at 499.

20       In *United States v. Ferber*, 966 F. Supp. 90 (D. Mass. 1997), the district

21   court addressed the delicate balance between federal and state sovereignty in the

22   context of a Travel Act prosecution under 18 U.S.C. § 1952, based on a predicate

23   violation of a Massachusetts gratuity statute never enforced by local prosecutors.

24   The district court dismissed the charge and concluded it would be contrary to the

25   clearly expressed purpose of the Travel Act to use the federal judicial system to

26   enforce a state law that was, as a matter of policy, not enforced by the state.   The

27   court reasoned that a contrary conclusion "would result in the type of expansive

28

1   reading of the Travel Act that would upset the delicate balance of power between

2   the state and federal governments." *Id*., at 106.

3        In *United States v. McGuire*, 178 F. 3d 203 (3rd Cir. 1999), the court found

4   proof of an effect on interstate commerce insufficient to support a conviction for

5   fire bombing an automobile in violation of 18 U.S.C. § 844(i). The statute

6   requires proof that the damaged property was "used in . . . any activity affecting

7   interstate or foreign commerce . . . ." The government relied on evidence that the

8   Toyota automobile that was the target of a bomb was occasionally used in a

9   catering business and had a bottle of Tropicana orange juice in it when the bomb

10  exploded. The Third Circuit rejected the district court's conclusion that a *de*

11  *minimus* effect on interstate commerce, no matter how attenuated, can support

12  federal jurisdiction, observing that this theory "could be stretched to include

13  driving one's daughter to a neighbor's house to deliver a single box of Girl Scout

14  cookies." The court concluded that "[i]n view of the Supreme Court's

15  pronouncement in *Lopez*, we do not believe that such an inconsequential effect can

16  support the exercise of federal jurisdiction over a purely intrastate concern without

17  obliterating the distinction between state and federal jurisdiction." *Id.,* at 210.

18                **6.    Counts One and Twenty-Two Should Be Dismissed
                          Because They Omit Necessary Factual Allegations
19                        Of An Essential Element of the Offense**

20       Count One and Count Twenty-Two are fatally deficient because they omit

21  necessary specific factual allegations demonstrating *substantial* impact on

22  interstate commerce. *See generally Russell v. United States*, 369 U.S. 749 (1962).

23  The failure to set forth any allegation of interstate commerce beyond the

24  boilerplate language of the statute does not meet minimal pleading requirements.

25       An indictment that merely recites the language of the statute does not fulfill

26  the requirement of Federal Rule of Criminal Procedure 7(c)(1) that an indictment

27  allege "a plain, concise and definite written statement of essential facts

28  constituting the offense charged." An indictment that merely parrots the language

                                        21

1  of 18 U.S.C. § 1959 and states that the enterprise is one "which is engaged in or

2  the activities of which affect, interstate or foreign commerce" fails to fulfill

3  requirements of the Sixth Amendment or Rule 7(c)(1).  *See, e.g., United States v.*

4  *Alkhabaz*, 104 F. 3d 1492, 1496 (6th Cir. 1997) (an indictment that fails to set forth

5  all the elements necessary to constitute the offense intended to be punished must

6  be dismissed as a matter of law).

7       In *Russell v. United States*, 369 U.S. 749 (1962) the defendants failed to

8  answer questions before a congressional subcommittee and were charged with

9  violating 2 U.S.C. § 192 by willfully refusing to answer "any question pertinent to

10  the question under inquiry."  The court held the indictments were insufficient

11  because they failed to specify the pertinent subject matter under congressional

12  subcommittee inquiry, and thus failed to provide adequate notice of the factual

13  details of the offense, as required by Rule 7.  "Where guilt depends so crucially

14  upon such a specific identification of fact, our cases have uniformly held that an

15  indictment must do more than simply repeat the language of the criminal statute."

16  *Id.,* at 764.   Pleading of essential facts not only allows the defendant to prepare

17  an adequate defense, it provides the court with a basis from which to determine

18  objections at trial and it reasonably circumscribes the prosecution from shifting its

19  theory "so as to take advantage of each passing vicissitude of the trial and appeal."

20  *Id.,* at 768.

21       Interstate commerce is an essential element of the offenses charged in

22  Count One and County Twenty-Two, and it must be described in greater detail

23  than the pro forma allegations of the Second Superseding Indictment.  The

24  boilerplate allegations of interstate commerce contain less detail than the

25  allegations found to be sufficient in *Mallory*.  The only reason this state offense is

26  being prosecuted in federal court is the government's mere allegation of interstate

27  commerce impact;  based upon such  tenuous jurisdictional allegations, the

28  government seeks to prosecute Vladimir Iraheta for a state offense in federal court

1  and  subject him to a potential death sentence.  Because the government's bare

2  jurisdictional allegations are insufficient to satisfy constitutionally grounded rules

3  of pleading, the Second Superseding Indictment should be dismissed.

4  **III.     Conclusion**

5          This Court is empowered to dismiss the charges at the pretrial stage if the

6  facts are undisputed and demonstrate that a jurisdictional element of the offense is

7  missing.  *United States v. Garcia*, 68 F. Supp. 2d at 813; *United States v. Hall*, 20

8  F. 3d 1084, 1087-88 (10th Cir. 1994).  Mr. Iraheta contends that *no* interstate

9  transactions form a part of the prosecution's case and that the government will be

10 forced to rely upon general allegations regarding the potential effect that the acts

11 at issue *may* have on interstate commerce.  As *Lopez* and *Bass* make clear,

12 however, the mere fact that a gun used may once have traveled in interstate

13 commerce is no longer sufficient to provide federal jurisdiction.  Similarly, as

14 *Lopez* demonstrates, general contentions by the government that the acts *must*

15 *necessarily* have affected commerce will no longer be enough.  The government

16 must show an actual effect on, or travel through, commerce.

17         The government has in this case federalized state crimes.  Vladimir Iraheta

18 should be tried by the Los Angeles County District Attorney.  It is therefore

19 requested that this Court order that Counts One and Twenty-Two of the second

20 superseding indictment be dismissed.

21

22 DATED:   December 23, 2009              Respectfully submitted,

23                                        MARCIA A. MORRISSEY
                                          CHARLES PEREYRA-SUAREZ
24

25                                 By:   /s/ Marcia A. Morrissey
                                         _____
26                                       Marcia A. Morrissey

27                                       Attorneys for Defendant
                                         VLADIMIR IRAHETA
28

# PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California and am over the age of 18 and not a party to the within action.  My business address is 2115 Main Street, Santa Monica, California 90405.

On December 23, 2009,  I served the foregoing document described as:

**MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT**

on the following parties in this action by United States mail:

> Brian Michael, Esq.
> Assistant U.S. Attorney
> United States Attorney's Office
> 312 North Spring Street, 12th Fl.
> Los Angeles, CA 90012

> Kevin Lally, Esq.
> Assistant U.S. Attorney
> United States Attorney's Office
> 312 North Spring Street, 12th Fl.
> Los Angeles, CA 90012

> Nili T. Moghaddam, Esq.
> Assistant U.S. Attorney
> United States Attorney's Office
> 312 North Spring Street, 12th Fl.
> Los Angeles, CA 90012

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct, except as to those matters stated on information and/or belief, and as to those matters, I believe them to be true; and that this Declaration was executed at Santa Monica, California on December 23, 2009.

                    /s/ Cathy L. Mackerl
               _____
                    CATHY L. MACKERL

24