MARCIA A. MORRISSEY
State Bar No. 66921
2115 Main Street
Santa Monica, California 90405
Telephone: (310) 399-3259
Facsimile:  (310) 399-1173
E-Mail:     MorrisseyMA@aol.com

CHARLES PEREYRA-SUAREZ
State Bar No. 67106
Union Bank Plaza, Suite 3200
445 South Figueroa Street
Los Angeles, California 90071
Telephone: (213) 430-4777
Facsimile: (213) 623-1890
E-Mail:     cpereyra@cpslawfirm.com

Attorneys for Defendant
VLADIMIR IRAHETA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VLADIMIR IRAHETA,<br><br>　　　　　Defendant. | CASE NO.  CR 07-1172-DDP<br><br>**VLADIMIR IRAHETA'S REPLY TO OPPOSITION TO MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT**<br><br>Date:　February 22, 2010<br>Time:　3:00 p.m.<br>Court:　Hon. Dean D. Pregerson |

　　　　Vladimir Iraheta, through his counsel, files this reply to the Government's Opposition to his Motion to Dismiss the Second Superseding Indictment.

**I.　　Introduction**

　　　　Vladimir Iraheta asks the Court to dismiss the Second Superseding Indictment because it is an unconstitutional exercise of governmental power under the Commerce Clause, Article I, Section 8 of the United States Constitution and

because it is unconstitutional as applied in this case. (Doc. 628). The government opposes the motion, arguing that: (1) *United States v. Lopez*, 514 U.S. 549 (1995), does not apply to RICO cases; (2) the VICAR statute does not require each violent act to have an impact on interstate commerce; (3) *United States v. Garcia*, 68 F. Supp. 2d 802 (E.D. Mich. 1999), is contrary to Ninth Circuit precedent; and (4) Mr. Iraheta's argument that the statute is unconstitutional as applied is really a pretrial challenge to the sufficiency of the evidence, which they may not entertain. (Doc. 678).

**II.    Argument**

As the government acknowledges in its opposition, there has been no post-*Lopez* determination of the constitutionality of the VICAR statute by the Ninth Circuit. (Doc. 678, at 4). And, as the Court knows, the scope of the Commerce Clause is in a state of flux. In his opening pleading, and in this reply, Mr. Iraheta attempts to identify the areas in which the RICO and VICAR statutes, both on its face and as applied in this case, regulates activity beyond the authority given Congress in the Commerce Clause.

In *Lopez*, 514 U.S. at 557-59, the Court set out the three categories through which Congress may regulate under its commerce power: the use of the channels of interstate commerce; the instrumentalities of interstate commerce; and activities that substantially affect interstate commerce. The government does not dispute that federal jurisdiction of the crimes of RICO and VICAR is predicated only on the third category – activities that substantially affect interstate commerce. (Doc. 678, at 4-5).

The government argues that a Congressional finding of a jurisdictional element is sufficient to uphold the validity of a statute under the Commerce Clause. "[T]he VICAR statute, which contains an express jurisdictional requirement that the 'enterprise' in furtherance of which a defendant committed a violent crime in aid of racketeering be one 'which is engaged in, or the activities

2

of which affect, interstate or foreign commerce,' is a constitutional exercise of Congress' Commerce Clause powers." (Doc. 678, at 5).

The government's assumption that all Commerce Clause problems melt away by virtue of a jurisdictional element rests on an oversimplification. To be sure, a jurisdictional hook is relevant to determining a statute's constitutionality under the Commerce Clause, but it is not alone conclusive. At most, the Supreme Court has said that a jurisdictional element "*may* establish," or "lend support to the argument," that a statute is within Congress' Commerce Clause power. *United States v. Morrison*, 529 U.S. 598, 612-13 (2000) (emphasis added). But to serve the proper narrowing function, a jurisdictional hook must actually "ensure, through case-by-case inquiry, that the [regulated activity] in question affects interstate commerce. *Lopez,* 514 U.S. at 561. Not every jurisdictional element will fit that bill. *See, e.g., United States v.Kallestad,* 236 F. 3d 225, 229 (5th Cir. 2000) ("Where the relationship between the interstate and local activity is attenuated, a jurisdictional hook alone cannot justify aggregating effects upon interstate commerce to find Congressional power under the Commerce Clause. It is one thing for Congress to prohibit possession of a weapon that has itself moved in interstate commerce, but it is quite another thing for Congress to prohibit homicides using such weapons."); *United States v. Roidia*, 194 F. 3d 465, 473 (3rd Cir. 1999) ("A jurisdictional element is only sufficient to ensure a statute's constitutionality when the element either limits the regulation to interstate activity or ensures that the intrastate activity to be regulated falls within one of the three categories of congressional power."). In the end, whether a statute includes a formal jurisdictional element or not, the test remains whether, as a substantive matter, Congress has observed "the distinction between what is national and what is local." *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937). As one court put the matter, if "uttering pretextual incantations evoking the phantasm of commerce" alone were sufficient, "Congress could federalize th crime of

3

murder by inserting a statutory element that requires the prosecution to prove that the defendant ate a cheeseburger that traveled in interstate commerce. *Maxwell*, 386 F. 3d at 1062.

The government does not dispute, because it cannot, that the federal government is a government of enumerated powers, and that the Constitution limits the federal government's authority to regulated activities. Courts have grappled, at least since the Nineteenth Century, with setting the limitations of Congress' authority under the Commerce Clause. Both the questions of how to define the issues and where to draw the lines have been part of the evolution of jurisprudence under the Commerce Clause. *See United States v. Lopez*, 414 U.S. at 552-58 (discussing the doctrinal history of Commerce Clause jurisprudence).

Underlying the debate is the very real tension between the need to respect the plenary powers accorded the states and the need to provide uniform regulations to promote the welfare of the country. Thus, in areas of traditional state concern such as defining and enforcing criminal law,[1] where the effect on interstate commerce is indirect and remote, the federal government must exercise more restraint in imposing regulatory schemes in areas that affect interstate commerce more directly. Otherwise, Congress' power under the Commerce Clause would "effectively obliterate the distinction between what is national and

---

[1] "Under our federal system, the 'States possess primary authority for defining and enforcing the criminal law.'" *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993) (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)). *See also Screws v. United States*, 325 U.S. 91, 109 (1945) (plurality opinion) ("Our national government is one of delegated powers alone. Under our federal system the administration of criminal justice rests with the States except as Congress, acting within the scope of those delegated powers, has created offenses against the United States."). When Congress criminalizes conduct already denounced as criminal by the States, it effects a "'change in the sensitive relation between federal and state criminal jurisdiction.'" *United States v. Enmons*, 410 U.S. 396, 411-12 (1973) (quoting *United States v. Bass*, 404 U.S. 336, 349 (1971).

what is local and create a completely centralized government." *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. at 37.

Many of the currently sitting Justices have cautioned against an overbroad or mechanistic analysis under the Commerce Clause. *See, e.g., United States v. Lopez*, 514 U.S. at 585 (Thomas, J., concurring) ("Although I join the majority, I write separately to observe that our case law has drifted far from the original understanding of the Commerce Clause.  In a future case, we ought to temper our Commerce Clause jurisprudence in a manner that both makes sense of our more recent case law and is more faithful to the original understanding of that Clause.") *Cf. Gonzales v. Raich*, 545 U.S. 1, 31 (2005) (Scalia, J., concurring) (opining that Congress's authority to regulate activities that "substantially affect" interstate commerce rests in the conjunction of the Commerce Clause and the Necessary and Proper Clause, rather than in the Commerce Clause alone and, thus, reaches purely intrastate activities which could impede federal regulatory schemes of interstate commerce).

Limiting Congress's reach under the Commerce Clause is not simply a matter of adherence to a Constitutional principle, as important as that may be.  As Justice Kennedy explained in *Lopez*,

> The theory that two governments accord more liberty than one requires for its realization two distinct and discernable lines of political accountability:  one between the citizens and the Federal Government;  the second between the citizens and the States.  If, as Madison expected, the Federal and State Governments are to control each other, see The Federalist No. 51, and hold each other in check by competing for the affections of the people, see The Federalist No. 46, those citizens must have some means of knowing which of the two governments to hold accountable for the failure to perform a given function. "Federalism serves to assign political responsibility,

5

> not to obscure it." *FTC v. Ticor Title Ins. Co.,* 504 U.S. 621, 636, 112 S. Ct. 2169, 2178, 119 L. Ed.2d 410 (1992). Were the Federal Government to take over the regulation of entire areas of traditional state concern, areas having nothing to do with the regulation of commercial activities, the boundaries between the spheres of federal and state authority would blur and political responsibility would become illusory. Cf. *New York v. United States, supra,* at 155-169, 112 S. Ct., at 2417-2425; *FERC v. Mississippi,* 456 U.S. 742, 787, 102 S. Ct. 2126, 2152, 72 L. Ed.2d 532 (1982) (O'Connor, J., concurring in judgment in part and dissenting in part). The resultant inability to hold either branch of the government answerable to the citizens is more dangerous even than devolving too much authority to the remote central power.

*United States v. Lopez*, 514 U.S. at 575 (Kennedy, J., concurring).

It is the need for citizens to hold all parts of government, federal and state, accountable that demands respect for the limits of congressional reach, even when Congress seeks to prohibit activities that harm those citizens. On its face and as applied in this case, the Second Superseding Indictment must be dismissed as an unconstitutional exercise of power over a traditional state activity.

DATED: February 15, 2010           Respectfully submitted,

                                   MARCIA A. MORRISSEY
                                   CHARLES PEREYRA-SUAREZ

                             By:   /s/ Marcia A. Morrissey
                                   Marcia A. Morrissey

                                   Attorneys for Defendant
                                   VLADIMIR IRAHETA

# **PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

     I am employed in the County of Los Angeles, State of California and am over the age of 18 and not a party to the within action.  My business address is 2115 Main Street, Santa Monica, California 90405.

     On February 16, 2010,  I served the foregoing document described as:

**VLADIMIR IRAHETA'S REPLY TO OPPOSITION TO MOTION DISMISS THE SECOND SUPERSEDING INDICTMENT**

on the following parties in this action by United States mail:

Brian Michael, Esq.　　　　　　　　Kevin Lally, Esq.
Assistant U.S. Attorney　　　　　　Assistant U.S. Attorney
United States Attorney's Office　　United States Attorney's Office
312 North Spring Street, 12th Fl.　312 North Spring Street, 12th Fl.
Los Angeles, CA 90012　　　　　　Los Angeles, CA 90012


Nili T. Moghaddam, Esq.
　　Assistant U.S. Attorney
United States Attorney's Office
312 North Spring Street, 12th Fl.
Los Angeles, CA 90012


     I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct, except as to those matters stated on information and/or belief, and as to those matters, I believe them to be true; and that this Declaration was executed at Santa Monica, California on February 16, 2010.

                      /s/ Cathy L. Mackerl
                      CATHY L. MACKERL