1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   KEVIN M. LALLY (Cal. State Bar No. 226402)
4  NILI T. MOGHADDAM (Cal. State Bar No. 226636)
   CAMERON L. SCHROEDER (Cal. State Bar No. 255016)
5  Assistant United States Attorneys
   Violent and Organized Crime Section
6      1500 United States Courthouse
       312 North Spring Street
7      Los Angeles, California 90012
       Telephone:  (213) 894-2170/6520
8      Facsimile:  (213) 894-3713
       E-mail: kevin.lally@usdoj.gov
9              nili.moghaddam@usdoj.gov

10 Attorneys for Plaintiff
   United States of America

11

                    UNITED STATES DISTRICT COURT
12
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
13

14 UNITED STATES OF AMERICA,        ) No. CR 07-1172(C)-DDP
                                    )
15            Plaintiff,            ) GOVERNMENT'S OPPOSITION TO
                                    ) DEFENDANT VLADIMIR IRAHETA'S
16            v.                    ) MOTION TO SUPPRESS DEFENDANT'S
                                    ) STATEMENTS AND ALL EVIDENCE
17 SERGIO PANTOJA, et al.,          ) DERIVED THEREFROM; DECLARATION
                                    ) OF PAUL KEENAN AND EXHIBITS;
18            Defendants.           ) DECLARATION OF KEVIN M. LALLY
                                    )
19                                  ) Hearing Date: TBD
                                    ) Hearing Time: TBD
20                                  )
                                    )
21                                  )
                                    )
22                                  )
                                    )
23 ────────────────────────────────

24      Plaintiff, United States of America, by and through its

25 counsel of record, the United States Attorney for the Central

26 District of California, hereby files its opposition to defendant

27 Vladimir Iraheta's Motion to Suppress Defendant's Statements (CR

28 1424).

1      This opposition is based upon the attached memorandum of

2  points and authorities, the Declaration of Paul Keenan and the

3  exhibits attached thereto, the Declaration of Kevin M. Lally, the

4  files and records in this case, and such further evidence and

5  argument as the Court may permit at the hearing.

6  Dated: August 1, 2011                ANDRÉ BIROTTE JR.
                                        United States Attorney
7
                                        ROBERT E. DUGDALE
8                                       Assistant U.S. Attorney
                                        Chief, Criminal Division
9

10                                      _____
                                        KEVIN M. LALLY
11                                      NILI T. MOGHADDAM
                                        CAMERON L. SCHROEDER
12                                      Assistant United States Attorneys

13                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              ii

1                   <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2                            I.

3                     <u>INTRODUCTION</u>

4     Vladimir Iraheta, also known as ("aka") "Jokes," "Slick,"

5 and "the Twin" (hereafter, "defendant"), has moved to suppress

6 his post-arrest statement. Defendant argues that the statements

7 he provided after he was advised of and waived his *Miranda* rights

8 should be suppressed "unless the government can prove that [they]

9 were made within six hours of his arrest." <u>Id.</u> at 8. The

10 government can prove just that: As defendant well knows, he was

11 arrested at approximately 6 a.m. on June 16, 2009 and interviewed

12 at approximately 7:30 a.m. that same morning. One and a half

13 hours – not six – transpired between defendant's arrest and his

14 interview. Defendant's interview lasted only one hour and he

15 made his initial appearance on the first available presentment

16 calendar that day. Thus, there was no delay in defendant's

17 initial appearance, let alone an "unnecessary and unreasonable"

18 delay requiring suppression of his *Mirandized* statement.

19 Defendant's spurious motion should be denied.[1]

20 ──────────────

21     [1] Defendant did not submit a declaration in support of his motion to suppress his statement. As the Court is aware, Local

22 Criminal Rule 12-1.1 requires a defendant personally to submit a declaration "setting forth all facts then known upon which it is

23 contended the motion should be granted." L.Cr.R. 12-1.1. Given all of the uncontroverted facts establishing that defendant was

24 interviewed within one and a half hours of his arrest, the government submits that defendant chose not to submit a

25 declaration in support of his motion because to do so would have required him to make false statements under penalty of perjury.

26 Moreover, defendant's failure to submit a declaration is alone grounds for this Court to deny his motion as factually

27 unsupported. It is also grounds for this Court to deny defendant's request for an evidentiary hearing. <u>See United</u>

28 <u>States v. Rodriguez-Hernandez</u>, No. 05-50077, 2006 WL 2357196, at

II.

FACTUAL BACKGROUND

Defendant was arrested at approximately 6 a.m. on June 16, 2009 at his residence at 2065 West 6th Street in Los Angeles in the heart of 18th Street CLCS Organization territory.[2]  See Declaration of Supervisory Special Agent ("SSA") Paul Keenan (hereafter, the "Keenan Declaration") at ¶ 4.  Subsequent to his arrest, defendant was transported to the Federal Bureau of Investigation ("FBI") Field Office in the Westwood area of Los Angeles.  Id. at ¶ 5.  At approximately 7:30 a.m. that same morning, defendant was interviewed by Los Angeles Police Department ("LAPD") Robbery-Homicide Division ("RHD") Detectives

---

*1 (9th Cir. 2006) (holding that defendant's "'boilerplate' and 'conclusory' declaration was not sufficiently specific to create a contested issue of fact" because it "failed to point to any shortcoming in the particular warnings given; to explain how Rodriguez was personally misled or confused by the language of those warnings; or to dispute the officers' declarations that Rodriguez was read Miranda warnings..."); United States v. Moran-Garcia, 783 F.Supp. 1266, 1268-1269 (S.D.C.A. 1991) ("it is the opinion of the Court that the Constitution does not require an evidentiary hearing when no affidavit or declaration has been provided to the Court to place facts into issue").  A defendant seeking an evidentiary hearing must "allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."  United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000).  Defendant's request for an evidentiary hearing therefore should also be denied where, as here, his motion to suppress fails to raise any issues of fact.  The audio and video recording of defendant's interview as well as the documentation attached to this motion set forth all of the underlying facts based on which the Court can evaluate the merits of defendant's motion.

    [2]  As SSA Keenan provides in his declaration in support of this motion, in compliance with the arrest warrants obtained in advance of the case, none of which permitted service before 6 a.m., no defendant who was arrested on June 16, 2009 was taken into custody before 6 a.m. that day.  Keenan Declaration at ¶ 4.

2

David Holmes and Michael Oppelt.  *Id.* at ¶ 6.  The interview was
audio and video recorded.[3]

Before defendant was questioned, he was advised of his
*Miranda* rights.  Exhibit A to the Keenan Declaration at 1-2; *see
also* Keenan Declaration at ¶ 7.  Defendant orally waived those
rights and additionally reviewed and signed an FBI Advice of
Rights form, a copy of which is attached as Exhibit C to the
Keenan Declaration, which advised him of his *Miranda* rights.[4]
*Id.* at ¶¶ 7-8; *see also* Exhibit C to the Keenan Declaration.  By
signing the Advice of Rights form, defendant acknowledged as

---

[3]  Draft transcripts of defendant's interview are attached
to the Keenan Declaration as Exhibits A and B.  Defendant's
interview was recorded by the FBI's in-room audio and video
recorders as well as on Detective Holmes' personal handheld
recorder.  Because the recordings begin and end at different
times, transcripts of both have been attached for the Court's
review.  In addition, defendant lodged with the Court copies of
audio and video recordings of defendant's June 16, 2009
interview.

[4]  Specifically, the Advice of Rights form provides under
the bolded heading "Your Rights":

Before we ask you any questions, you must understand your
rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we
ask you any questions.

You have the right to have a lawyer with you during
questioning.

If you cannot afford a lawyer, one will be appointed for you
before any questioning if you wish.

If you decide to answer questions now without a lawyer
present, you have the right to stop answering at any time.

3

1  follows: "I have read this statement of my rights and I
2  understand what my rights are.  At this time, I am willing to
3  answer questions without a lawyer present."  Exhibit C to the
4  Keenan Declaration.

5       Defendant was interviewed for one hour.  Keenan Declaration
6  at ¶ 9.  During his interview, defendant was advised of the
7  nature of the charges pending against him.  Defendant was told
8  that the charges centered on a 2001 murder and that he had been
9  "charged with this murder as well as multiple other counts of
10 racketeering."  Exhibit A to the Keenan Declaration at 20, 40.
11 It is also clear that defendant had been advised of the nature of
12 the charges brought against him prior to his interview because he
13 told the detectives, "from what I understand it's a federal
14 indictment.  I don't understand why am I talking to LAPD
15 Detectives."  Id. at 15.  After the interview was completed, FBI
16 Special Agent Matt Parker, who assisted with the operation of the
17 June 16, 2009 takedown in this case, spoke with defendant and
18 advised him that he would be interviewed by Pretrial Services and
19 taken to court for his initial appearance.  Exhibit B to the
20 Keenan Declaration at 47.  Special Agent Parker then asked
21 defendant: "You talked to the detectives for a little bit.  You
22 get an idea of what's going on?"  Id. at 48.  Defendant nodded,
23 "Yes."  Id.

24      Defendant was transported from the FBI Field Office in
25 Westwood at approximately 9:10 a.m. and brought to the United
26 States Marshal Service at the Edward R. Roybal Federal Building
27 and Courthouse (hereafter "the federal courthouse") at
28 approximately 9:25 a.m.  See FBI Master Log, attached as Exhibit

                                    4

1  D to the Keenan Declaration; Keenan Declaration at ¶ 10.

2  Defendant was signed in at the federal courthouse at 10:05 a.m.

3  that morning.  <u>See</u> United States Marshal New Booking Sheet,

4  attached as Exhibit E to the Keenan Declaration; Keenan

5  Declaration at ¶ 11.  Defendant made his initial appearance that

6  afternoon on the first available presentment calendar of the

7  day.[5]  Keenan Declaration at ¶ 12.

8                              III.

9                            <u>ARGUMENT</u>

10  A.   <u>DEFENDANT'S *MIRANDIZED* STATEMENT WAS VOLUNTARY</u>

11       Defendant relies on Federal Rule of Criminal Procedure 5 and

12  Title 18, United States Code, Section 3501 to argue that his

13  post-arrest statement should be suppressed because he was asked

14  to provide a statement over six hours after his arrest and

15  because he did not fully understand the nature of the charges

16  brought against him.  Def. Br. at 8.  Defendant's facially

17  frivolous claims do not withstand scrutiny.

18       Rule 5(a)(1)(A) provides that a "person making an arrest

19  within the United States must take the defendant without

20  unnecessary delay before a magistrate judge" so that the

21  defendant can make his initial appearance.  Confessions obtained

22  from a defendant during a period of unnecessary delay between

23

24  _____

25       [5]  As set forth in the attached Declaration of Kevin M.
    Lally, pursuant to district-wide procedures for large-scale
    takedowns, and in accordance with the directives of the Chief

26  Magistrate Judge for this specific takedown, the calendar start
    time for the initial appearances of the arrested defendants was

27  set for 1 p.m. to provide time for Pretrial Services to complete
    their reports and for the Spanish language interpreters to

28  complete the translation of the 114-page indictment.

                              5

arrest and initial appearance may be inadmissible at trial. McNabb v. United States, 318 U.S. 332, 341 (1943); Mallory v. United States, 354 U.S. 449 (1957). Title 18, United States Code, Section 3501 provides that a trial judge in determining whether a confession was voluntarily given should consider "all the circumstances surrounding the giving of the confession" including "the time elapsing between arrest and arraignment of the defendant" and "whether such defendant knew the nature of the offense with which he was charged." 18 U.S.C. § 3501(b). The statute further provides that a person's confession "shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention..." 18 U.S.C. § 3501(c). Section 3501(c) limits this so-called "safe-harbor" provision by providing that "the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer."

Defendant's motion fails because there was no delay in bringing him before a magistrate judge for his initial appearance. Defendant was brought before a magistrate judge on the first available presentment calendar on the day of his

1  arrest.  Nor was defendant's initial appearance delayed "for the
2  purpose of custodial interrogation."  Def. Br. at 5.  Defendant
3  was arrested at approximately 6 a.m. and interviewed at
4  approximately 7:30 a.m.  Defendant's interview was terminated
5  approximately one hour later and defendant was processed and
6  checked in at the federal courthouse by 10:05 a.m., hours in
7  advance of the first available presentment calendar that day.
8       Nor does an analysis of the Section 3501(b) factors
9  "strongly suggest," as defendant contends, that his post-arrest
10 statement was not voluntarily given because "there is no clear
11 indication that he *truly* understood the nature of the charges"
12 pending against him.  Def. Br. at 4-5 (emphasis added).
13 Defendant concedes though his counsel that he "discussed the
14 charges against him with the LAPD" during his interview, but
15 speculates that "it is highly unlikely" he understood the nature
16 of those charges because "RICO is a highly complex and technical
17 statutory scheme."  Id. at 5.  It is well established that a
18 "defendant need not be advised before he confesses of the
19 specific statute he is suspected of violating" to make a valid
20 waiver of his *Miranda* rights.  Andaverde, 64 F.3d at 1311-1312;
21 see also United States v. Williams, 616 F.2d 759, 761 (5th Cir.
22 1980).  It follows therefore that defendant would not have to
23 understand the "highly complex and technical statutory scheme" of
24 RICO to make a valid waiver of his *Miranda* rights.  Defendant was
25 advised that the charges against him centered on a 2001 murder
26 and that he had been "charged with this murder as well as
27 multiple other counts of racketeering."  Exhibit A at 20, 40.
28 Defendant also acknowledged after his interview was completed

                                    7

1  that he had talked to the detectives and had "an idea of what's
2  going on."  Exhibit B at 40.  It is also clear that defendant had
3  been advised prior to his interview of the nature of the charges
4  pending against him because he told the detectives that he had
5  been charged in a federal indictment.  Exhibit A at 15.
6  Defendant no doubt understood the nature of the charges pending
7  against him.
8      Because there was no delay in the timing of defendant's
9  initial appearance and because defendant voluntarily provided a
10  statement after being advised of and waiving his *Miranda* rights,
11  his motion to suppress should be denied.
12                              IV.

13                           CONCLUSION

14      For all the foregoing reasons, defendant Vladimir Iraheta's
15  Motion to Suppress Defendant's Statements and All Evidence
16  Derived Therefrom should be denied.
17  Dated: August 1, 2011         ANDRÉ BIROTTE JR.
                                  United States Attorney
18
                                  ROBERT E. DUGDALE
19                                Assistant U.S. Attorney
                                  Chief, Criminal Division
20
21
                                  KEVIN M. LALLY
22                                NILI T. MOGHADDAM
                                  CAMERON L. SCHROEDER
23                                Assistant United States Attorneys

24                                Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA
25
26
27
28

                               8