O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Vladimir Alexander Iraheta, | ) ) | Civil Case No. 2:21cv06776 DDP Criminal Case No. |
| Petitioner, | ) ) | 2:07cr01172(25)DDP |
| v. | ) ) | **ORDER DENYING PETITIONER'S MOTION** |
| United States of America, | ) ) | **TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §** |
| Defendant. | ) ) | **2255** |

_____

Presently before the court is Defendant-Petitioner Vladimir Iraheta ("Petitioner")'s Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Having considered the submissions of the parties and the arguments advanced therein, the court denies the motion and adopts the following Order.

**I.   Background**

In December 2011, Defendant was charged in a Fourth Superseding Indictment with one count of Racketeer Influenced and Corrupt Organizations ("RICO") Conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 1); narcotics conspiracy, in violation of 21 U.S.C. § 846 (Count 2); and violent crime, specifically, murder, in aid of racketeering activity ("VICAR"), in violation of 18

U.S.C. § 1959 (Count 11).  The facts of the case are recounted more
fully in United States v. Perez, 962 F.3d 420, 430 (9th Cir. 2020).
In short, Petitioner served as a lieutenant to and provided
"muscle" for a mid-level leader of a street gang that, under the
direction of the Mexican Mafia prison gang, controlled drug
distribution, extortion, and other illegal activities in the
MacArthur Park neighborhood of Los Angeles.  After an approximately
ten-week trial, a jury convicted Petitioner on Counts 1 and 2, but
failed to return a verdict on Count 11, resulting in a mistrial as
to that VICAR murder count.  The jury also found that the RICO and
drug conspiracies involved at least 280 grams of crack cocaine.

At sentencing, the court conservatively determined that the
drug conspiracy of which Petitioner was a part was responsible for
over 25.2 kilograms of crack cocaine, resulting in a base offense
level of 38.  The court applied some, but not all, of the
additional enhancements sought by the government, yielding a total
offense level of 45, with a corresponding advisory Guidelines range
of life, regardless of criminal history category.  The court
ultimately imposed a sentence of life.

Petitioner, along with several co-defendants, appealed his
conviction.  Perez, 962 F.3d at 430.  Unlike his co-defendants,
however, Petitioner did not appeal his sentence.  Id. at 444.
Instead, Petitioner challenged only the sufficiency of the evidence
underlying Count 2.  Id. at 444-45.  The Ninth Circuit affirmed.
Id.  Petitioner then filed the instant § 2255 motion, pro se.

## II.  Legal Standard

Section 2255 allows federal prisoners to file motions to
vacate, set aside, or correct a sentence on the ground that "the

sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255.  The Supreme Court has cautioned, however, "that § 2255 may not be used as a chance at a second appeal."  United States v. Berry, 624 F.3d 1031, 1038 (9th Cir. 2010) (citing United States v. Addonizio, 442 U.S. 178, 184 (1979)); see also Bousley v. United States, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotation marks omitted)); United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993) ("Section 2255 [] is not designed to provide criminal defendants multiple opportunities to challenge their sentence."). "If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error."  Johnson, 988 F.2d at 945; United States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003).

**III. Discussion**

    A. 21 U.S.C. § 846.

    Petitioner contends first that the narcotics conspiracy statute, 21 U.S.C. § 846, that formed the basis for Count 2 is unconstitutional "because it does not warrant mandatory minimums or statutory maximums."  (Mot. at 6.)  Notwithstanding Petitioner's references to vagueness, notice, overt acts, overbreadth, and separation of powers, his Reply emphasizes that he presents only the "narrow and focused [] issue" that mandatory minimums may not

3

1  be imposed under Section 846 because drug conspiracy "is not an

2  offense which has as an element drug type and quantity."[1]  (Reply

3  at 3.)

4      Petitioner's argument largely centers on <u>Bifulco v. United</u>

5  <u>States</u>, 447 U.S. 381 (1980).[2]  There, a prior version of Section

6  846 provided that narcotics conspiracy was "punishable by

7  imprisonment or fine or both which may not exceed the maximum

8  punishment prescribed" for the underlying substantive drug

9  offense.[3]  <u>Bifulco</u>, 447 U.S. at 383 (quoting Section 406 of the

10  Comprehensive Drug Abuse Prevention and Control Act of 1970, 84

11  Stat. 1265).  At the time, pursuant to 21 U.S.C. § 841(b), the

12  penalties for a drug distribution offense in violation of 21 U.S.C.

13  § 841(a) included a mandatory minimum term of "special parole."

14  _____

15      [1] As addressed further below in the context of other claims, Petitioner does not explain why this issue was not or could not

16  have been raised on direct appeal.  Moreover, although the government addresses this claim as a challenge to Petitioner's

17  conviction under Section 846, Petitioner's clarifications cast doubt upon his contention that this claim bears on his conviction,

18  rather than his sentence.  Furthermore, Petitioner does not explain how he was prejudiced by the application of a mandatory minimum

19  sentence, given that the court imposed a sentence of life.

20      [2] Petitioner's Reply also quotes extensively from <u>United States v. Grant</u>, 524 F.Supp.2d 1204 (C.D. Cal. 2007).  This

21  reliance is misplaced.  First, the decision in <u>Grant</u> concerned the constitutionality of a mandatory minimum sentence specifically for

22  a drug conspiracy "instigated, orchestrated and implemented by the government itself" in the form of a sting operation.  <u>United States</u>

23  <u>v. Grant</u>, 524 F. Supp. 2d 1204, 1209 (C.D. Cal. 2007), vacated in part, 312 F. App'x 39 (9th Cir. 2009).  There was no evidence, nor

24  does Petitioner contend, that the government played any similar role in the instant case.  Second, the district court's below-

25  minimum sentence was vacated on appeal, and the matter remanded for imposition of a sentence consistent with the statutory mandatory

26  minimum.  <u>United States v. Grant</u>, 312 F. App'x at 41.

27      [3] As discussed below, the current version of the statute provides that persons convicted under Section 846 "shall be subject

28  to the same penalties as those proscribed for the [substantive drug] offense."  21 U.S.C. § 846.

Id. at 384.  The petitioner, Bifulco, contended that because the language of Section 846 only authorized a fine and/or imprisonment as a penalty for a drug conspiracy, he could not also be sentenced to special parole, regardless whether such a penalty applied to the substantive, but uncharged, Section 841(a) drug offense.  Id. at 385.  After examining the language, structure, legislative history, and policy purpose behind the statutes, the Court agreed, holding that, consistent with the rule of lenity, Section 846 alone did not authorize a term of special parole.[4]  Id. at 400.

Attempting to analogize to Bifulco, Petitioner argues that "Congress never made drug type and quantity part of Section 846." (Mot. at 9.)  That much is true.  To convict a defendant of a drug conspiracy under Section 846, the government need only prove that "(1) the defendant agreed with another person that some member of the conspiracy would commit the relevant underlying offense ([typically] § 841(a)), and that (2) the defendant had the requisite intent necessary for a conviction of the underlying offense."  United States v. Collazo, 984 F.3d 1308, 1320 (9th Cir. 2021) (en banc).  Petitioner then leaps to the conclusion, however, that because drug type and quantity are not essential elements of a Section 846 offense, convictions under Section 846 do not, and indeed cannot, trigger a mandatory minimum sentence, regardless whether Section 841 references such elements or penalties.[5]  (Reply

---

[4] "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." Ladner v. United States, 358 U.S. 169, 178 (1958).

[5] Drug type and quantity are not, in the traditional sense,
(continued...)

at 9.)   In other words, Petitioner attempts to liken the mandatory
minimums referenced in Section 841(b) to the "special parole"
penalty at issue in <u>Bifulco</u>.   Because, the argument goes, "special
parole" was not applicable to Section 846 convictions, even though
it did apply to substantive convictions under Section 841(b),
neither should mandatory minimums apply, as they are referenced
only in Section 841(b), and not in Section 846 itself.

Under the version of Section 1986 at issue in <u>Bifulco</u>,
Petitioner would be correct.   <u>See</u> <u>United States v. Dabdoub-Canez</u>,
961 F.2d 836, 837 (9th Cir. 1992) (per curiam) ("Prior to 1988,
there was no minimum sentence applicable to a conspiracy conviction
under section 846.") (quoting <u>United States v. Maree</u>, 934 F.2d 196,
200-01 (9th Cir.1991)) (internal quotation marks omitted).   As
Petitioner recognizes, however, in 1988 Congress amended Section
846 to render a drug conspiracy offense punishable by "the same
penalties as those prescribed for the offense, the commission of
which was the object of the conspiracy."   <u>Id.</u> at 838 (quoting the

_____

[5](...continued)
essential elements of a substantive Section 841(a) offense.   <u>See</u>
<u>Collazo</u>, 524 F.Supp.2d at 1322 ("We treat drug type and quantity as
elements under section 841(b)(1) only for the[] constitutional
purposes" of protecting a defendant's Sixth and Fifth Amendment
rights.); Ninth Cir. Model Crim. Jury Instruction No. 12.1
(September 2024) ("The government is not required to prove the
amount or quantity of [specify controlled substance]. It need only
prove beyond a reasonable doubt that there was a measurable or
detectable amount of [specify controlled substance].")   The
penalties for violation of Section 841(a) are set forth in Section
842(b), and include, in the case of a Section 841(a) violation
involving at least 280 grams of a substance containing crack
cocaine, a mandatory minimum of ten years' imprisonment and a
maximum of life.   21 U.S.C. § 841(b)(1)(A).   Drug type and
quantity, therefore, are essential elements that must be proved to
subject a defendant to a Section 841(b) mandatory minimum.   <u>See</u>
<u>Collazo</u>, 984 F.3d at 1321-22 (discussing <u>Alleyne v. United States</u>,
570 U.S. 99 (2013)).

1  Anti-Drug Abuse Act of 1988, Pub.L. 100-690, Title VI, § 6470(a),

2  102 Stat. 4377 (1988)).  As the Ninth Circuit has explained, "the

3  intent of the amendment was to make clear that any penalty that may

4  be imposed for a substantive drug offense may be imposed for a

5  conspiracy to commit that offense."  Id. (cleaned up) (quoting

6  United States v. Montoya, 891 F.2d 1273, 1293 n. 25 (7th

7  Cir.1989)).  Accordingly, the Ninth Circuit rejected the very

8  argument put forward by Petitioner here.  See Dabdoub-Canez, 961

9  F.2d at 838 ("[A] conspiracy conviction under section 846 carries

10 with it the same mandatory minimum sentence as a conviction for the

11 corresponding substantive offense under section 841."); see also

12 Collazo, 984 F.3d at 1320 (explaining that a conviction under

13 Section 846 for conspiracy to commit a Section 841(a) offense

14 triggers the penalties set forth in Section 841(b)).

15      B.   Ineffective Assistance of Counsel

16      Petitioner also asserts that both his trial and appellate

17 counsel provided ineffective assistance.[6]  Under the Sixth

18 Amendment, all criminal defendants enjoy the right to effective

19 assistance of counsel.  Strickland v. Washington, 466 U.S. 668,

20 686-700 (1984).  To show ineffective assistance of counsel, a

21 defendant must demonstrate that (1) counsel's performance was

22 deficient, such that it fell below an objective standard of

23 reasonableness, and (2) the defendant was prejudiced as a result,

24 such that there is a "reasonable probability that . . . the result

25 of the proceeding would have been different" if counsel had

---

27  [6] "[A]n ineffective-assistance-of-counsel claim may be brought
in a collateral proceeding under § 2255, whether or not the
28 petitioner could have raised the claim on direct appeal."
Massaro v. United States, 538 U.S. 500, 504 (2003).

1  rendered effective assistance.  Id. at 687-88, 694.  There is a

2  "strong presumption that counsel's conduct falls within a wide

3  range of acceptable professional assistance."  Id. at 689.

4         1.   Trial Counsel

5       Petitioner asserts that trial counsel's performance was

6  constitutionally deficient because counsel (1) "failed to file any

7  motions," (2) failed to seek a trial continuance to prepare a

8  defense against the drug conspiracy charge, (3) gave an inadequate

9  closing statement with respect to the drug conspiracy charge, (4)

10  failed to move for a mistrial as to the RICO charge, and (5) failed

11  to seek a mistrial for constructive amendment of the indictment.[7]

12  (Mot. at 99-102).  Petitioner has failed, however, to satisfy

13  either Strickland prong.

14              a.   Failure to file motions or seek a continuance

15       With respect to motions, Petitioner is simply incorrect that

16  counsel did not file any motions.  As the government highlights,

17  counsel filed or joined over two dozen motions, including discovery

18  motions, motions to dismiss, a motion to suppress, and motions in

19  limine.  Although Petitioner's Reply appears to suggest that his

20  claim is limited to counsel's supposed failure to file any motions

21  related to the Section 846 charge in the Fourth Superseding

22  Indictment, Petitioner does not explain, with one exception, what

23

24       [7] Petitioner also states briefly that trial counsel provided
    ineffective assistance at sentencing.  (Mot. at 101.)  As stated
25  above, Petitioner, represented by separate appellate counsel, did
    not appeal his sentence, and Section 2255 motions are not intended
26  to serve as a substitute for or second attempt at an appeal.
    Moreover, the bases for Petitioner's contention, such as the
27  sufficiency of the evidence of drug conspiracy and the government's
    supposed constructive amendment of the indictment, are duplicative
28  of arguments discussed elsewhere in this Order.

motion or motions counsel should have filed, how the failure to file any such motion fell below an objective standard of reasonableness, or whether or how the result of the trial would have been different if counsel had filed some unidentified motion. See <u>Strickland</u>, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.")  Similarly, although Petitioner does specifically state that after the Fourth Superseding Indictment was filed, counsel failed to move for a trial continuance "to properly prepare for [Count] 2," Petitioner does not explain why any such continuance was necessary, what preparation counsel failed to undertake, or how such preparation would have affected the result.

b.  Closing argument

As to counsel's closing argument, Petitioner again misstates the record to the extent he suggests that his counsel gave a one-line statement.  Petitioner clarifies in his Reply that his claim that counsel gave an inadequate closing is limited to the issue of the Section 846 drug conspiracy charged in Count 2.  Although Petitioner does accurately restate one of counsel's two explicit references to Count 2, he omits context and certain key portions of counsel's argument.  Notably, Petitioner's counsel's closing argument followed, on the third day of closing arguments, the arguments of all three of Petitioner's co-defendants, all of whom, and particularly Petitioner's direct superior in the gang, argued that there was insufficient evidence of drug sales.  Accordingly, counsel prefaced his entire argument by stating that it was "not

necessary, even if it were possible, to repeat" things that other counsel had already said, nor to "be as thorough as to Counts 1 and 2, nor as engaging," as other counsel had been.  Nevertheless, counsel did "digress" to cast doubt upon evidence of drug sales other than personal sales by Petitioner for himself.  After proceeding to argue extensively as to the Count 11 VICAR murder charge, on which the jury ultimately hung, counsel then did, as Petitioner relates, state, "Counts 1 and 2, RICO conspiracy and a drug conspiracy deserve the same attention; they deserve the same conscientious deliberation within your own mind and your own heart."  Petitioner does not acknowledge, however, that counsel prefaced this statement, too, by stating the he would "not repeat the fine comments of my colleagues."

The court cannot agree with Petitioner that counsel's decision, on the third day of closing argument at the tail end of a multi-month trial, not to duplicate co-counsel's lengthy arguments as to Count 2 fell below an objective standard of reasonableness.  "Counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage."[8]  Yarborough v. Gentry, 540 U.S. 1, 6, (2003).  Nor is Petitioner's speculation that the jury might have hung on Count 2 had counsel spent more time focusing on drug evidence sufficient to establish a reasonable

---

[8] This is particularly true where, as here, in the words of Petitioner's appellate counsel, "[t]he record against defendant was overwhelmingly strong."  Declaration of Brittney M. Harris, Ex. B at 3.

1  probability of such a differing result for purposes of <u>Strickland</u>'s

2  prejudice prong.

3                   c.  RICO Conspiracy

4       Petitioner also argues that counsel was ineffective for

5  failing to seek a mistrial as to the RICO conspiracy charged in

6  Count 1 because the jury failed to find two predicate racketeering

7  acts.  (Mot. at 101.)  The substantive RICO statute proscribes

8  participation "in the conduct of [an] enterprise's affairs through

9  a pattern of racketeering activity."[9]  18 U.S.C. § 1962(c).  A

10 "'pattern of racketeering activity' requires at least two acts of

11 racketeering activity."  18 U.S.C.A. § 1961(5).  Although

12 Petitioner appears to assert that the jury failed to find the

13 requisite pattern of racketeering necessary to convict on Count 1,

14 the basis for Petitioner's contention is unclear.  The government

15 presented extensive evidence of numerous racketeering acts,

16 including drug trafficking, extortion, robbery, witness

17 intimidation, and money laundering, and the court gave specific

18 jury instructions on these acts.  The court also instructed the

19 jury that Count 1 required the government to prove a pattern of

20 racketeering activity consisting of at least two acts of

21 racketeering.  To the extent Petitioner argues that the jury must

22 have failed to find two predicate acts because it did not convict

23 Petitioner of VICAR murder on Count 11, Petitioner is mistaken, as

24 a defendant need not himself commit, let alone be charged with, two

25 predicate racketeering acts to be guilty of a RICO conspiracy

26 ───────────────

27     [9] Petitioner was convicted of racketeering conspiracy pursuant
   to 18 U.S.C. § 1862(2), which provides, " It shall be unlawful for
28 any person to conspire to violate any of the provisions of
   subsection (a), (b), or (c) of this section."

1  offense under 18 U.S.C. § 1962(d).  See <u>Salinas v. United States</u>,

2  522 U.S. 52, 65 (1997); <u>United States v. Jaimez</u>, 45 F.4th 1118,

3  1130 (9th Cir. 2022).  Trial counsel did not render ineffective

4  assistance by failing to raise Petitioner's incorrect theory.

5                    d.  Constructive Amendment

6       Lastly, Petitioner, citing to <u>United States v. McNeese</u>, 901

7  F.2d 585, 603 (7th Cir. 1990) (overruled on other grounds by a

8  <u>United States v. Nance</u>, 236 F.3d 820, 825 (7th Cir. 2000)),

9  contends that counsel was ineffective for failing to seek a

10 mistrial when the government constructively amended the indictment

11 at the end of its case-in-chief.  (Mot. at 102.)  This argument is

12 not clear to the court.  There are two types of constructive

13 amendments to an indictment, "those involving a complex of facts

14 presented at trial distinctly different from those set forth in the

15 charging instrument and (2) those where the crime charged in the

16 indictment was substantially altered at trial, so that it was

17 impossible to know whether the grand jury would have indicted for

18 the crime actually proved." <u>United States v. Singh</u>, 995 F.3d 1069,

19 1078-79 (9th Cir. 2021) (internal quotation marks omitted).  In

20 <u>United States v. Ward</u>, 747 F.3d 1184 (9th Cir. 2014), for example,

21 the defendant was charged with stealing the identities of two

22 specific people.  <u>Ward</u>, 747 F.3d at 1186.  The court, however,

23 admitted evidence relating to four different other people, and

24 instructed the jury that it could convict on an identity theft

25 charge based on conduct related to any victim.  Because there was

26 no way to know whether the jury then convicted on charged or

27 uncharged conduct, the court held that the indictment had been

28 constructively amended, and overturned the conviction.  <u>Id.</u> at

1192.  Similarly, in <u>Stirone v. United States</u>, 361 U.S. 212 (1960), the defendant was indicted for interfering with interstate sales of sand.  361 U.S. at 213.  The trial court, however, also allowed evidence of interference with sales of steel, and instructed the jury that it could convict on the basis of either sand or steel-related evidence.  <u>Id.</u>  The Supreme Court reversed, holding that the trial court's actions effectively amended the indictment, and cast doubt upon the conclusion that the jury convicted solely on the charge made in the indictment.  <u>Id.</u> at 217; <u>Singh</u>, 995 F.3d at 1079.

There are not, however, any analogous circumstances here. Rather, Petitioner appears to suggest that because the government argued a drug quantity at sentencing that was not specifically alleged in the indictment, such sentencing argument constructively amended the indictment.  (Mot. at 102.)  Any arguments made by the government at sentencing, however, after the return of the jury's verdict, could not possibly have altered the terms of the indictment such that the jury might have convicted on conduct outside the Fourth Superseding Indictment.  Because Petitioner's argument appears to misapprehend the nature of a constructive indictment, Petitioner's counsel could not have been ineffective for failing to argue it to the court as the basis for a mistrial.

### 2.  Appellate Counsel

Petitioner, unlike his three co-defendants who also went to trial, did not appeal his sentence.  <u>See</u> <u>Perez</u>, 962 F.3d at 433. Petitioner now argues that appellate counsel's decision not to challenge Petitioner's sentence, as well as his decision not to request or put forth the sentencing transcript, constituted

1    ineffective assistance.[10]  (Mot. At 103-11.)  <u>Strickland</u> applies to

2    appellate counsel as well as trial counsel.  <u>See</u> <u>Miller v. Keeney</u>,

3    882 F.2d 1428, 1433 (9th Cir. 1989).  The onus remains on a

4    defendant claiming ineffective assistance of appellate counsel to

5    "show that appellate counsel's representation fell below an

6    objective standard of reasonableness, and that, but for counsel's

7    errors, a reasonable probability exists that he would have

8    prevailed on appeal."  <u>Hurles v. Ryan</u>, 752 F.3d 768, 785 (9th Cir.

9    2014).

10        Appellate counsel has stated that "the record against

11   [Petitioner] was overwhelmingly strong," and that in his

12   "pro[f]essional judgment, there was no deficiency whatsoever in the

13   sentencing proceedings that could remotely result in appellate

14   relief."  Harris Decl., Ex. B at 2-3.  Counsel further stated that

15   "it is usually quite detrimental to an appellant's interests to put

16   frivolous or poorly reasoned arguments before federal appellate

17   judges."  <u>Id.</u> at 3.  Indeed, counsel unsuccessfully attempted to

18   sever Petitioner's appeal from those of his co-defendants, who did

19   unsuccessfully appeal their sentences.  As counsel later explained

20   in correspondence to Petitioner, Petitioner "came off in a very bad

21   light" at sentencing, leading counsel to conclude that it was in

22   Petitioner's "better interests not to have [the] sentencing

23

24        [10] Petitioner also contends that appellate counsel was
25   ineffective for failing to challenge the RICO conspiracy conviction
     under Count 1.  (Mot. at 113).  Petitioner's reasoning mirrors that
26   presented with respect to trial counsel, described above.  As
     discussed above, Petitioner's argument appears to be premised on
27   the mistaken contention that at least two racketeering acts must be
     charged in the indictment and proved as to a defendant himself.
28   <u>See</u> <u>Salinas</u>, 522 U.S. at 65; <u>Jaimez</u>, 45 F.4th at 1130 (9th Cir.
     2022).

proceeding transcribed."  Mot, Ex. A at 1.  Counsel went on to explain that he remained convinced that his strategy was sound, as it was a "very painful experience watching [other counsel] try to answer the Ninth Circuit's very pointed and repeated questions about how [other counsel] could present [the sentencing arguments other counsel] was presenting on the record before [the court]."  Id.

This court may not "second-guess counsel's assistance in hindsight," but rather must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Leeds v. Russell, 75 F.4th 1009, 1018 (9th Cir. 2023) (quoting Strickland, 466 U.S. at 690).  The court need not take any position on appellate counsel's characterization of the extensive damaging evidence presented at sentencing to conclude that counsel's position as to the likely effect of that evidence, and wisdom of highlighting it to the appellate court, was not objectively unreasonable.

Even if Petitioner could show that appellate counsel's strategic decision not to appeal Petitioner's sentence constituted deficient performance, he has not demonstrated prejudice. Petitioner conclusorily asserts that it is reasonably probable that he would have received a lower sentence if counsel had challenged various sentencing enhancements.  (Mot. at 110.)  Petitioner has failed to show a reasonable probability, however, that such challenges would have been successful.  Instead, Petitioner puts the cart before the horse by contending that the "application of an incorrect, higher guideline range will be sufficient to show a reasonable probability of a different result."  Id.  The question

15

1   is not, however, whether a successful argument as to guidelines

2   error would have resulted in a different result on appeal, but

3   whether it is reasonably probable that counsel could have made a

4   successful sentencing guidelines argument to begin with.  Not only

5   does Petitioner fail to meet his burden to make such a showing,

6   but, moreover, the Ninth Circuit's rejection of Petitioner's co-

7   defendants' sentencing arguments suggests that any similar effort

8   by Petitioner's counsel would have met a similar fate.  See Perez,

9   962 F.3d at 447-455.

10       C.   Remaining Claims

11       Petitioner raises a number of additional claims throughout his

12   118-page motion.  Although the government dismisses several of

13   those claims out of hand due to their "convoluted nature," the

14   court does not share that perception of Petitioner's submission.

15   (Opp. at 3. n.1).  Although lengthy and, at times, strident in

16   tone, Petitioner's motion, drafted under challenging circumstances,

17   is generally well-composed.  Nevertheless, Plaintiff's additional

18   claims are not cognizable on a § 2255 motion.  Claim (c), for

19   example, contends that there was insufficient evidence to support

20   the Count 2 narcotics conspiracy conviction under 21 U.S.C. § 846.

21   (Mot. at 24.)  Petitioner, however, already raised an unsuccessful

22   sufficiency of the evidence challenge on direct appeal.  See Perez,

23   962 F.3d at 444-46.  "The law in this circuit is clear that when a

24   matter has been decided adversely on appeal from a conviction, it

25   cannot be litigated again on a 2255 motion."  Odom v. United

26   States, 455 F.2d 159, 160 (9th Cir. 1972) (per curiam); see also

27   Addonizio, 442 U.S. at 184; Berry, 624 F.3d at 1038; Johnson, 988

28   F.2d at 945.  Other claims, including claim (b), claims (c) through

16

(h), and claim (j), discuss purported sentencing errors that are either non-constitutional or constitutional in name only and, in any event, were not raised on appeal.  See Johnson, 988 F.2d at 945; United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994).  Accordingly, these claims are procedurally barred.

**IV.  Conclusion**

For the reasons stated above, Petitioner's § 2255 motion is DENIED.  Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, his request for a certificate of appealability is denied.  See 28 U.S.C. § 2255(c)(2).

IT IS SO ORDERED.

Dated: May 21, 2025

HONORABLE DEAN D. PREGERSON
United States District Judge